**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                                  *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERNESTO HERNANDEZ,** | : | **Civil Action No.** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **OVERHEAD DOOR CORPORATION** | : | |
| **d/b/a WON-DOOR CORPORATION,** | : | |
| **Defendant.** | : | |

### CIVIL ACTION

Plaintiff, Ernesto Hernandez (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against Defendant Overhead Door Corporation d/b/a Won-Door Corporation (hereinafter "Defendant"), for violations of Section 1981 and the Pennsylvania Human Relations Act ("PHRA"). In support thereof, Plaintiff avers as follows:

### THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual with a mailing address in Pocono Summit, PA.

3. Upon information and belief, Defendant Won-Door Corporation is a manufacturer of horizontal sliding fire and security door systems with a location and corporate headquarters at 1865 South 3480 West, Salt Lake City, UT 84108 and

4. Defendant Won-Door Corporation is a fully owned subsidiary of Overhead Door

Corporation which is a manufacturer of doors and openers with a location and corporate headquarters at 2501 S State Highway 121, Business Suite 200, Lewisville, TX 75067.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

6. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

7. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

8. The Court may properly maintain personal jurisdiction over Defendant because the Defendant' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

9. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

10. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil

2

Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

11. Venue is properly laid in the Middle District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant conduct business in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

**<u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u>**

12. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

13. Plaintiff exhausted his administrative remedies under the PHRA.

14. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), digitally signed on April 12, 2024, alleging race discrimination against Defendant.

15. Plaintiff filed an amended Charge with the EEOC, digitally signed on April 24, 2024, alleging race discrimination against Defendant.

16. The Charge was assigned a Charge Number 530-2024-06767 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

17. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated January 22, 2026.

18. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

19. Plaintiff files the instant Complaint within two (2) years of the issuance of the Right to Sue in this matter as it relates to his PHRA claims.

20. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

**MATERIAL FACTS**

**PLAINTIFF'S EMPLOYMENT HISTORY**

21. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

22. Plaintiff is Hispanic.

23. On or about February 2, 2022, Defendant Won-Door hired Plaintiff in the position of School Security Sales Manager for the Eastern United States region.

24. Plaintiff was well qualified for his position and performed well.

25. Defendant Won-Door Corporation was acquired by Defendant Overhead Door Corporation previously on April 1, 2021.

**DEFENDANT DID NOT PROVIDE PLAINTIFF WITH PROPER TRAINING OR A SALES QUOTA**

26. Upon being hired, Plaintiff was given little to no training.

27. Plaintiff was instructed to contact superintendents of schools in his region to sell intruder proof doors to the schools.

28. Importantly, intruder proof doors for schools are a long sales cycle product that take two (2) to three (3) years to sell and install.

29. Defendant did not give Plaintiff any sales quotas.

**PLAINTIFF WAS THE ONLY HISPANIC SCHOOL SECURITY SALES MANAGER AND WAS NOT PROVIDED THE SAME OPPORTUNITIES AS HIS CAUCASIAN COMPARATORS**

30. Plaintiff was one (1) of four (4) School Security Sales Managers for Defendant across the United States.

31. Plaintiff was the only Hispanic School Security Sales Manager for Defendant.

32. Throughout his employment, Plaintiff's non-Hispanic counterparts, Randy Ward (Caucasian), Jason Kirkeliss (Caucasian) and Brad Tearlink (Caucasian), were given business advantages over Plaintiff.

33. For example, Ward, Kirkeliss and Tearlink were invited to trade shows for superintendents.

34. Despite the fact that these trade shows were located in Plaintiff's region, Plaintiff was not invited by Defendant to attend.

35. Further, Ward was allowed to do Parent Teacher Association (PTA) shows and take potential customers out to dinner.

36. Plaintiff was not given this privilege.

**PLAINTIFF HAD SIGNIFICANTLY MORE QUOTES THAN HIS CAUCASIAN COMPARATORS**

37. Nonetheless, Plaintiff had the most viable quotes for schools.

38. Plaintiff had eight (8) quotes while Ward had approximately four (4) quotes and both Kirkeliss and Tearlink did not have any quotes.

**DEFENDANT PLACED PLAINTIFF ON PROBATION**

39. In or around October 2023, Plaintiff received a letter via email from Scott Smart, Vice President of Sales.

40. The letter stated that Plaintiff was abruptly placed on probation.

41. The letter also stated Plaintiff now had a specific sales quota to sell.

42. Plaintiff never received a discipline or warning about his performance.

5

## SMART SET PLAINTIFF UP FOR FAILURE WITH AN UNOBTAINABLE SALES QUOTA

43. During the next Zoom sales meeting approximately one (1) week later, Plaintiff asked Smart about the letter.

44. Smart responded that the letter was due to Plaintiff's lack of performance.

45. Smart stated Plaintiff needed to attain six (6) million dollars in quotes by the end of the year in less than two (2) months.

46. Smart also stated that he would not be counting any of Plaintiff's prior eight (8) quotes in 2023 toward this sales quota.

47. Plaintiff informed Smart that this was unattainable.

## SMART ASSIGNED PLAINTIFF AND HIS COMPARATORS LEADS AND INSTRUCTIONS AND PLAINTIFF FOLLOWED THE INSTRUCTIONS, BUT HIS COMPARATORS DID NOT

48. Smart gave Plaintiff and his School Security Sales Manager counterparts leads on schools in their respective regions.

49. Smart told Plaintiff to turn these into presentations and then do school walks and proposals with prospective schools.

50. Plaintiff followed Smart's instructions.

51. However, upon information and belief, Plaintiff's counterparts did not follow through with doing this.

## DEFENDANT DID NOT COMMUNICATE WITH PLAINTIFF REGARDING HIS PERFORMANCE AT THE END OF 2023

52. At the end of 2023, Plaintiff did not hear anything back about his performance.

6

## DEFENDANT TERMINATED PLAINTIFF

53. On or about February 2, 2024, Plaintiff met with Smart via Zoom for a meeting scheduled the day prior.

54. Smart abruptly terminated Plaintiff's employment, allegedly due to lack of performance.

55. Defendant abruptly terminated Plaintiff's employment, allegedly due to lack of performance.

56. Defendant did not terminate Ward.

57. Ward had not been given a sales quota to hit in 2024.

58. Plaintiff had significantly more sales quotes for schools than Ward at the time of his termination.

59. Defendant discriminated against Plaintiff due to his race in violation of Section 1981 and the PHRA.

60. Defendant' acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

## COUNT I – RACE DISCRIMINATION
## SECTION 1981

61. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

62. Plaintiff is a member of protected classes in that he is Hispanic.

63. Plaintiff was qualified to perform the job for which he was hired.

64. Plaintiff suffered adverse job actions, including, but not limited to termination.

65. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

66. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

67. Defendant discriminated against Plaintiff on the basis of his protected class.

68. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

69. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

70. Defendant's conduct was willful or performed with reckless disregard to his federal statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – RACE DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

71. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

72. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of his protected class (Hispanic).

73. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Ernesto Hernandez, requests that the Court grant him the following relief against Defendant:

(a)    Compensatory damages;

(b)    Punitive damages;

(c)    Liquidated damages;

8

(d)     Emotional pain and suffering;

(e)     Reasonable attorneys' fees;

(f)     Recoverable costs;

(g)     Pre and post judgment interest;

(h)     An allowance to compensate for negative tax consequences;

(i)     A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of Section 1981 and the PHRA.

(j)     Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k)     Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

9

RESPECTFULLY SUBMITTED,

KOLLER LAW, LLC


Date: July 29, 2026          **By:**  */s/David M. Koller*
                               David M. Koller, Esquire
                               Jordan D. Santo, Esquire
                               2043 Locust Street, Suite 1B
                               Philadelphia, PA 19103
                               215-545-8917
                               davidk@kollerlawfirm.com
                               jordans@kollerlawfirm.com

                               *Counsel for Plaintiff*